B



*470370694MTG1*

| Control Number | Instrument Type |
|---|---|
| 470370694 | MTG |



**WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
**(THIS PAGE FORMS PART OF THE INSTRUMENT)**
**\*\*\* DO NOT REMOVE \*\*\***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: MTG - MORTGAGE
FEE PAGES: 16     TOTAL PAGES: 16

| RECORDING FEES | |
|---|---:|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $48.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| TOTAL FEES PAID | $73.00 |

| TRANSFER TAXES | |
|---|---:|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE: 2/22/2007
TIME: 10:10:00

| MORTGAGE TAXES | |
|---|---:|
| MORTGAGE DATE | 1/19/2007 |
| MORTGAGE AMOUNT | $104,375.00 |
| EXEMPT | Yes |
| COUNTY TAX | $261.00 |
| YONKERS TAX | $0.00 |
| BASIC | $522.00 |
| ADDITIONAL | $283.20 |
| MTA | $261.00 |
| SPECIAL | $0.00 |
| TOTAL PAID | $1,327.20 |

SERIAL NUMBER: CX55120
DWELLING: 1-2 Family

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF CORTLANDT

WITNESS MY HAND AND OFFICIAL SEAL

*/s/ Timothy C. Idoni*

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
ATLAS ABSTRACT & SETTLEMENT SERVI
22 SAW MILL RIVER RD

HAWTHORNE, NY 10532

0694
P-15

AAW06-2257

After Recording Return To:

ATLAS ABSTRACT &
SETTLEMENT SERVICES, INC.
22 SAW MILL RIVER ROAD
HAWTHORNE, NEW YORK 10532-1533

This instrument was prepared by:
Wells Fargo Bank, N.A.
DAVID NELSON
DOCUMENT PREPARER
ONE HOME CAMPUS, MAC X2303-013
DES MOINES, IOWA 50328
515-324-8125
(Name & Address of Preparer)

---

[Space Above This Line For Recording Data]

Account number: 650-650-4401584-0XXX         Reference number: 20063553129826
Section 45.10
Block 3
Lot 5
Town of Cortlandt

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Security Instrument."** This document, which is dated **JANUARY 19, 2007**, together with all Riders to this document, will be called the "Security Instrument."

(B) **"Borrower."** **JOHN SOTOMAYOR AND ALEXANDRA LOAIZA**, whose address is **13321 87TH, OZONE PARK, NEW YORK 11417** sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) **"Lender."** Wells Fargo Bank, N.A. will be called "Lender." Lender is a corporation or association which exists under the laws of the United States of America. Lender's address is **101 North Phillips Avenue, Sioux Falls, SD 57104**.

(D) **"Debt Instrument."** The note signed by Borrower and dated **JANUARY 19, 2007**, will be called the "Debt Instrument." The Debt Instrument shows that I owe Lender **ONE HUNDRED FOUR THOUSAND THREE HUNDRED SEVENTY-FIVE AND 00/100THS** Dollars (U.S. $ **104,375.00**) plus interest and other amounts that may be payable. I have promised to pay this debt in one or more Periodic Payments and to pay the debt in full by **FEBRUARY 05, 2022.**

(E) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) **"Loan."** The "Loan" means all amounts owed now or hereafter under the Debt Instrument, including without limitation principal, interest, any prepayment charges, late charges and other fees and charges due under the Debt Instrument, and also all sums due under this Security Instrument, plus interest.

(G) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of

NY--Closed-end Security Inst - HCWF#20v9 (5/12/2006)                     *(page 1 of 13 pages)*

Documents Processed 01-16-2007, 09:21:21



Rights in the Property" sometimes will be called the "Sums Secured."
**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

- [N/A] Leasehold Rider
- [N/A] Third Party Rider
- [N/A] Other(s) [specify] _Legal Description_

**(I) "Applicable Law."** All controlling applicable federal law and, to the extent not preempted by federal law, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."
**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that may be imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."
**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 4) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."
**(M) "Periodic Payment."** "Periodic Payment" means the amounts as they become due for principal, interest and other charges as provided for in the Debt Instrument.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Debt Instrument including, but not limited to, all renewals, extensions and modifications of the Debt Instrument;
(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument and the Debt Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

**EXHIBIT**

## SCHEDULE A DESCRIPTION

Title Number **AAW06-2257**                                                                 Page    1

ALL that certain plot, piece or parcel of land situate, lying, and being in the Town of Cortlandt, County of Westchester, and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Maple Avenue, North 59 degrees 33' 30" West 291.78 feet, North 51 degrees 21' 20" West 78.31 feet, and North 47 degrees 46' 40" West 39.11 feet from a point on the southerly side of Maple Avenue where the same is intersected by the westerly line of lands shown on map of "Dickerson Mountain Est.," filed in the Westchester County Clerk's Office, Division of Land Records, as Map No. 3763;

RUNNING THENCE from said point along lands now or formerly of Paul and Paulette Rosenzweig the following courses and distances: South 54 degrees 54' 30" West 41.59 feet; South 53 degrees 36' 00" West 48.70 feet, South 15 degrees 53' 30" West 36.78 feet, South 21 degrees 39' 20" East 44.36 feet, South 06 degrees 30' 00" West 51.08 feet, and South 08 degrees 35' 40" East 101.58 feet to a point;

THENCE continuing along lands of Rosenzweig North 66 degrees 56' 00" West 110.00 feet to a point on the easterly side of Furnace Dock Road;

RUNNING THENCE along the easterly side of Furnace Dock Road the following courses and distances: North 23 degrees 09' 30" East 22.49 feet, North 15 degrees 08' 00" East 38.27 feet,  North 02 degrees 49' 00" West 18.53 feet, North 22 degrees 52' 40" West 76.31 feet, North 23 degrees 11' 30" West 51.47 feet, North 21 degrees 51' 30" West 34.00 feet, North 07 degrees 50' 10" West 121.33 feet, North 49 degrees 01' 30" East 22.97 feet, and South 78 degrees 57' 00" East 12.26 feet to a point on the southerly side of Maple Avenue;

THENCE running along the southerly side of Maple Avenue the following courses and distances: South 52 degrees 49' 00" East 19.87 feet, South 56 degrees 44' 20" East 100.17 feet, South 62 degrees 48' 00" East 62.34 feet, and South 54 degrees 35' 50" East 43.60 feet to the point or place of BEGINNING.

(A) The Property which is located at  **2359 MAPLE AVE**
[Street]
__**CORTLANDT MANOR**__, New York  **10567**
[City, Town or Village]                                    [Zip Code]
This Property is in __**WESTCHESTER**__ County. It has the following legal description:

**SEE ATTACHED EXHIBIT**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record as of the execution date of this Security Instrument.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Prepayment and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Debt Instrument and any prepayment charges, late charges and other charges due under the Debt Instrument. Payments due under the Debt Instrument and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Debt Instrument or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Debt Instrument and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in (or in accordance with) the Debt Instrument or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Subject to Applicable Law, Lender may return any payment or partial payment if the
NY–Closed-end Security Inst - HCWF#20v9 (5/12/2006)                              *(page 3 of 13 pages)*

Documents Processed 01-16-2007, 09:21:21

payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future.

**2. Application of Payments or Proceeds.** Unless other procedures are set forth in the Debt Instrument or Applicable Law, Lender may apply payments in any order that Lender deems appropriate.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Debt Instrument shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) has disclosed such lien to Lender at application for the Loan or agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument and which was not disclosed on the application for the Loan that Borrower provided to Lender, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions satisfactory to Lender set forth above in this Section 3.

To the extent not prohibited by Applicable Law, Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**4. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. To the extent not prohibited by Applicable Law, Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 4 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance. Upon Lender's request, Borrower shall promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance.

In the event of loss and subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights, the following provisions in this Section 4 shall apply. Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Debt Instrument or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Debt Instrument or this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

**5. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless (a) Borrower has disclosed to Lender at application for the Loan that the Property shall not be Borrower's principal residence; (b) Lender otherwise agrees in writing, which consent shall not be unreasonably withheld; or (c) unless extenuating circumstances exist which are beyond Borrower's control.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 4 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, (a) representations concerning Borrower's occupancy of the Property as Borrower's principal residence and (b) liens on the Property that have priority over this Security Instrument.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument or any obligation that is secured by a lien that is superior to this Security Instrument, (b) there is a legal proceeding

NY–Closed-end Security Inst - HCWF#20v9 (5/12/2006) *(page 5 of 13 pages)*

Documents Processed 01-16-2007, 09:21:21

that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of any lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, if the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, in the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-mortgagors; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who signs this Security Instrument but does not execute the Debt Instrument (a "co-mortgagor"): (a) is signing this Security Instrument only to mortgage, grant and convey the co-mortgagor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Debt Instrument without the co-mortgagor's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 17) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Debt Instrument or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Debt Instrument). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** Unless otherwise described in the Debt Instrument or in another agreement between Borrower and Lender, the following provisions regarding notices shall apply. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address for Borrower under the Loan at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and, to the extent not preempted by federal law, the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Debt Instrument conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Debt Instrument which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; (c) the word "may" gives sole discretion without any obligation to take any action; and (d) headings that appear at the beginning of the sections of this Security Instrument are inserted for the convenience of the reader only, shall not be deemed to be a part of this Security Instrument, and shall not limit, extend, or delineate the scope or provisions of this Security Instrument.

**15. Borrower's Copy.** Borrower shall be given one copy of the Debt Instrument and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Sale of Debt Instrument; Change of Loan Servicer; Notice of Grievance.** The Debt Instrument or a partial interest in the Debt Instrument (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Debt Instrument and this Security Instrument and performs other mortgage loan servicing obligations under the Debt Instrument, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Debt Instrument. If there is a change of the Loan Servicer, Borrower will be given written notice of the change as required by Applicable Law. If the Debt Instrument is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Debt Instrument, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Debt Instrument unless otherwise provided by the purchaser of the Debt Instrument.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 17. If Borrower and Lender have entered into an agreement to arbitrate disputes, the provisions of any such arbitration agreement shall supersede any provision in this Section 17 that would conflict with the arbitration agreement.

**18. Hazardous Substances.** As used in this Section 18: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, mold, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**19. Assignment of Leases and Rents.** Borrower irrevocably grants, conveys, sells and assigns to Lender as additional security: (a) all of Borrower's right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases"), and (b) all of the rents, security deposits, issues and profits arising out of or earned in connection with the Property (all referred to as "Rents").

Borrower will promptly provide Lender with true and correct copies of all existing and future Leases. Borrower may collect, receive, enjoy and use the Rents so long as Borrower is not in default under the terms of this Security Instrument. Borrower agrees that this assignment is immediately effective between the parties to this Security Instrument. Borrower agrees that this assignment is effective as to third parties when Lender takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Loan is satisfied.

Borrower agrees that Lender may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Borrower of an event of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of an event of default, Borrower will endorse and deliver to Lender any payment of Rents in Borrower's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agent shall be applied first to the

costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by this Security Instrument in the order provided for in Section 2. If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any amounts disbursed by Lender for such purposes shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower warrants that no default exists under the Leases or any applicable landlord/tenant law. Borrower agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**20. Condominiums; Planned Unit Developments.** If the Property is a unit in a condominium project ("Condominium Project") or is part of a planned unit development ("PUD"), Borrower agrees to the following:

A. Obligations. Borrower shall perform all of Borrower's obligations under the Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project or PUD and any condominium association, homeowners association or equivalent entity ("Community Association"); (ii) any by-laws or other rules or regulations of the Community Association; and (iii) other equivalent documents. Borrower shall promptly pay, when due, all Community Association Dues, Fees, and Assessments.

B. Property. For units in a Condominium Project, the Property includes the unit in, together with an undivided interest in the common elements of, the Condominium Project, and Borrower's interest in the Community Association and the uses, proceeds and benefits of Borrower's interest. For PUDs, the Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Constituent Documents, and Borrower's interest in the Community Association and the uses, benefits and proceeds of Borrower's interest.

C. Property Insurance. So long as the Community Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation under Section 4 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Community Association policy. Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy. In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements of the Condominium Project or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

D. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Community Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

E. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements of the Condominium Project or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the rights of any lienholder with rights to such proceeds that are superior to Lender's rights. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 9.

F. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Community Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Community Association unacceptable to Lender.

G. Remedies. If Borrower does not pay Community Association Dues, Fees, and Assessments when due,

then Lender may pay them. Any amounts disbursed by Lender under this paragraph G shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**21. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 16 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Debt Instrument and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 21 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Debt Instrument, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 13 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Debt Instrument and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**22. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Debt Instrument and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**23. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Debt Instrument as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 23.

NY–Closed-end Security Inst - HCWF#20v9 (5/12/2006)   *(page 11 of 13 pages)*

Documents Processed 01-16-2007, 09:21:21

**24. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Rider signed by me and recorded with it.

_____(Seal)
Borrower JOHN SOTOMAYOR

_____(Seal)
Borrower ALEXANDRA LOAIZA

_____(Seal)
Borrower

_____(Seal)
Borrower

_____(Seal)
Borrower

_____(Seal)
Borrower

_____(Seal)
Borrower

_____(Seal)
Borrower

NY–Closed-end Security Inst - HCWF#20v9 (5/12/2006)                                  *(page 12 of 13 pages)*

Documents Processed 01-16-2007, 09:21:21

For An Individual Acting In His/Her Own Right if
Executed Within New York

State of New York ) ss.:
County of <u>Westchester</u> )

On the <u>19th</u> day <u>of January</u> in the year <u>2007</u> before me, the undersigned, personally appeared <u>JOHN SOTOMAYOR and ALEXANDRA LOAIZA</u>
_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(Signature and office of individual taking acknowledgement.)

Steven E. De Young
Notary Public, State of New York
No. 02DE4662831
Qualified in Westchester County
Commission Expires March 30, <u>2007</u>

[NOTARIAL SEAL]

Print Name: _____
          Notary Public

My commission expires: _____

NY–Closed-end Security Inst - HCWF#20v9 (5/12/2006)

*(page 13 of 13 pages)*

Documents Processed 01-16-2007, 09:21:21